UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 05-130-C**

**KIMBERLY MIRACLE, ET AL.** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**BULLITT COUNTY, KENTUCKY, ET AL.,** **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon a joint motion for preliminary approval of the settlement agreement (DE 40). The court, having reviewed the record and heard from counsel for the parties, and being otherwise sufficiently advised, will certify the matter as a class action for settlement purposes and preliminarily approve the settlement agreement.

**I. Procedural History**

On March 2, 2005, Kimberly Miracle filed this action in her individual capacity and on behalf of all others similarly situated, alleging that the defendants violated her constitutional rights. An amended complaint dated October 24, 2007, named additional plaintiffs in their individual capacities and on behalf of all others similarly situated. The representative plaintiffs thus include: Kimberly Miracle, Jeffrey Fleenor, Richard Daily, April Griffith, Keith Wilson and Earl Taylor. The complaint states that the defendants required members of the class to remove their clothing for a visual inspection of their bodies when arrested for non-violent minor offenses, even though there existed no reasonable suspicion that they were

carrying or concealing weapons or contraband. The plaintiffs, individually and on behalf of all others similarly situated, seek damages under the Civil Rights Act of 1871, 42 U.S.C. §1983, for violations of the rights, privileges and immunities guaranteed them by the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

This matter is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Rule 23 sets forth certain requirements for the certification of a class action, and requires that any dismissal or compromise of the action must be approved by the court. The court must take the following steps to approve a class-action settlement: 1) preliminarily approve the proposed settlement, 2) direct that all interested persons are given notice, and 3) hold a hearing to determine whether the proposed settlement is fair, reasonable and adequate. *See Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983). The court held a hearing on July 31, 2008, regarding the grounds for certification of the class and to address certain issues surrounding the preliminary approval of the settlement. At the hearing, the court certified the matter as a class action and preliminarily approved the settlement agreement, stating that this written opinion would follow. The court will now certify the class for settlement purposes, preliminarily approve the proposed settlement agreement, direct the parties to file the proposed notice with the court for its approval, and schedule the fairness hearing.

## II. Certification of Class Action

The parties' proposed settlement agreement contemplates that the court certify a class with the following definition: "a class consisting of all persons who were arrested for any qualifying non-violent, non-drug related misdemeanor offense, and were strip-searched at the Bullitt County Detention Center ("the Jail") from March 2, 2004, to the present, when there existed no basis for a reasonable, individualized suspicion that they were carrying or concealing weapons or contraband."[1]

The party moving to certify the class has the burden of proving that class certification is appropriate. *In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996) (hereinafter "*AMS*"). In support of certification, the plaintiffs cite numerous cases where "substantially similar" classes were certified based on the requirements of Rule 23. *See* DE 44, at 3-4. However, the court must conduct a "rigorous analysis" of the elements of Rule 23 before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also* Fed. R. Civ. P. 23. The requirements of Rule 23(a) and (b) must be satisfied before a court certifies a class for trial or for settlement-only purposes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The standard is heightened when the certification is for the

---

[1] The language in the settlement agreement is slightly different, but counsel for both parties agreed at the July 31, 2008, hearing that the phrase "all persons who allege that they were arrested" should be changed to "all persons who were arrested." *See* Settlement Agreement, at 1, attached to the joint motion for preliminary approval (DE 40).

purpose of settlement. *See Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007) (citing *Amchem Prods.*, 521 U.S. at 620). Rule 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. In addition, the plaintiff must show that the proposed class falls into one of the three categories described in Rule 23(b).

1. **Rule 23(a)**

In general, the court finds that the parameters of the class definition sufficiently limit the class to ensure that all the requirements of Rule 23(a) are satisfied. The date listed in the definition was chosen based upon Kentucky's statute of limitations for personal injury cases, and for 42 U.S.C. § 1983 cases. Thus, the March 2, 2004, date is one year before Ms. Miracle filed this action.

    a. **Numerosity**

In their amended complaint and representations before the court, the plaintiffs claim that there are hundreds of potential members in this class. "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone." *AMS*, 75 F.3d at 1079. The court finds that the class in this matter is so numerous that joinder of all members is impractical.

4

In attempting to identify the class, the parties identified 5,177 people who could potentially fall within the class. They subsequently mailed questionnaires on February 1, 2007, to 5,177 individuals who had been admitted to the jail since the March 2, 2004, trigger date of the class. The questionnaires sought information from the addressees about the charges for which they were arrested and the manner in which they were searched on admission to the jail.[2] Responses were received from 534 of the addressees, a response rate better than ten percent. After a screening process, during which the questionnaire responses and the defendants' jail files were examined, the parties determined that approximately 120 complained of strip-searches under circumstances that fit within the class definition and that would show a violation of the constitutional rights of the responders to the questionnaire. Thus, the parties having identified approximately 120 people who complained of strip-searches that allegedly violate constitutional rights, the court finds that the numerosity requirement of Rule 23(a) is satisfied.

     **b. Commonality**

The court must find that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a). "The commonality test 'is qualitative rather than quantitative[;] that is, there need be only a single issue common to all members of the class.'" *AMS*, 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte,

---

[2] Over 1,600 of those questionnaires were returned undeliverable. The court notes that it is anticipated that the notice to class members may recapture some of those 1,600 people.

*Newberg on Class Actions*, § 3.10, at 3-47 (3rd ed. 1992)). The claims of the representative plaintiffs and all other similarly situated are based on the same questions of law or fact, according to the allegations in the amended complaint.

The representative plaintiffs were arrested after March 2, 2004, for non-violent misdemeanor offenses, were taken to the Bullitt County Detention Center, and were subjected to visual body cavity searches when the defendants had no reasonable, individualized suspicion that they were carrying or concealing weapons or contraband. The plaintiffs allege that the defendants regularly subject persons arrested for non-violent minor offenses to the same treatment. Those strip-searches violate the Constitution and the clearly established law of this circuit. *See Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir. 1989). The legal theory, that the searches conducted by the defendants pursuant to a blanket policy or custom were unconstitutional, applies to all members of the class. There are questions common to each class member, such as whether the defendants had a policy, including an unwritten policy, to subject persons to strip-searches when those persons were in custody for non-violent minor offenses and there was no reasonable basis under the law for conducting those strip-searches. Thus, the court finds that there are questions of law and fact common to the members of the class.

### c. Typicality

The court must also find that the claims or defenses of the representative

parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *AMS*, 75 F.3d at 1083 (quoting 1 Newberg, *supra*, § 3.13, at 3-76).

In this matter the representative plaintiffs and the unnamed members of the class were allegedly arrested for non-violent minor offenses and strip-searched in violation of their constitutional rights. The amended complaint details the facts with respect to the individually named representatives, including their dates of arrest, that they were charged with non-violent minor offenses, and that the defendants subjected them to strip-searches without a reasonable basis for doing so. As discussed under the commonality element above, the legal theory under which the class would proceed is the same for each member, whether a representative or unnamed member of the class.

Additionally, the class definition ensures that all class members were at the same jail, during the same period of time, and were arrested for the same kind of offenses under circumstances that did not warrant a strip-search. The narrowing of the class definition ensures that the typicality requirement is satisfied. Thus, the court finds that the representatives' claims are typical of the claims of the other class members.

7

### c. Adequacy of representation

The court must find that the representative parties will fairly and adequately protect the interests of the class and that they have done so thus far. There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976).

The amended complaint satisfies the adequacy requirement by stating that the plaintiffs are members of the class as defined and that their claims are typical of the claims of all class members. Specifically, the plaintiffs state that they were offended at the treatment accorded them and the class members, and that they will aggressively pursue the interests of the entire class. The amended complaint also claims that the plaintiffs' interests in obtaining injunctive relief and actual and punitive damages for the violations of their constitutional rights and privileges are consistent with, and not antagonistic to, those of any other person within the class.

The court finds that the representatives have common interests with the unnamed class members, as discussed under the commonality element above. Specifically, the representatives were subject to the same conduct by the defendants and their claims are based on the same legal theory. With respect to the vigorous prosecution of the case, Kimberly Miracle originated and pursued this

case alone for two-and-a-half years. The other representatives, who were added after the 120 potential claimants were identified, participated, along with Ms. Miracle, in two mediations, lengthy meetings and periodic telephone contact with counsel, and then approved the settlement. Therefore, the representative parties have thus far fairly and adequately protected the interests of the class, and will continue to do so.

### 2. Rule 23(b)

The class must additionally meet one of the three criteria in Rule 23(b). The court finds that this class meets the criteria in Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The court again finds that the plaintiffs have demonstrated the commonality of the class members' claims and interests. The parties have not presented issues on which the interests of the class members differ and the court finds that their common issues predominate over any such differing interests.[3]

---

[3] The reasonableness of any search is an individualized defense, and thus is not common to all class members. The court notes that the exact circumstances surrounding the search of each class member may differ, especially with respect to whether the defendants had a reasonable basis for believing that the arrestee was carrying or concealing weapons or contraband. However, the plaintiffs allege that the defendants were acting under an unwritten policy to search everyone and thus not conducting an individualized assessment to determine whether to conduct a strip-search. The court also notes that the proposed settlement agreement sets forth a mechanism for resolving this question with respect to each individual, and thus the common issues among the class are still predominant over this fact-

Additionally, the court finds that the class definition, narrowly limited as it is, ensures that this element of Rule 23(b)(3) is satisfied.

Further, a class action is a superior method for resolving the dispute. A multiplicity of suits, with their consequent burden on the court and the defendants, should be avoided. It would be nearly impossible for all of the class members to intervene as party plaintiffs in this action. The class action mechanism is an efficient and fair way to adjudicate the claims presented here. Thus, the class meets the Rule 23(b)(3) criteria.

Accordingly, the court finds that the plaintiffs, in requesting certification of the class for settlement purposes, have satisfied their burden to prove that the class meets the requirements of Rule 23.

### III. Preliminary Approval of Settlement Agreement

The preliminary approval stage of the litigation requires the court to determine whether the settlement is preliminarily fair, reasonable, and adequate, but does not require the court to review the merits of the case. "Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366,

---

specific defense. Additionally, considering the method outlined in the settlement agreement for resolving this question, including the claimant's right to appeal a denial based on this defense, the class action remains the most efficient and effective manner of resolving the dispute.

370 (S.D. Ohio 1990) (citing cases). "Once preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Bronson v. Board of Education*, 604 F. Supp. 68, 71 (S.D. Ohio 1984)); *see also In re Dun & Bradstreet*, 130 F.R.D. at 370 (citing cases).

"Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class." Federal Judicial Center, *Manual for Complex Litigation* 315 (4th ed. 2004).

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.* at 236-37. The court must determine whether the settlement agreement is within the range of possible approval.

In response to the joint motion for preliminary approval of the settlement agreement, the court requested supplemental briefing[4] and scheduled a hearing on

---

[4] The parties were directed to address the following concerns of the court regarding the fairness, reasonableness, and adequacy of the settlement: 1) the treatment of class representatives compared with the treatment of remaining class

the motion.[5]  The parties filed a joint response to the court's order, addressing each of the court's concerns in turn.  *See* DE 44.  At the hearing on July 31, 2008, the court requested that the parties present further information on only three of the topics because the parties' brief sufficiently addressed the other issues.  The three issues addressed in further detail at the hearing were 1) the treatment of class representatives compared with the treatment of remaining class members; 2) the level of compensation to the class members, specifically the $1,500 cap; and 3) the provision allowing only one payment per class member no matter how many times each was allegedly strip-searched.

Counsel for the parties presented information at the hearing to demonstrate

---

members; 2) the level of compensation to the class members and whether it is inadequate; 3) the provision allowing only one payment per class member no matter how many times they were admitted into the facility and/or searched while incarcerated; 4) the total number of potential class members, including the extent to which they have been identified; 5) imposing strict eligibility conditions and/or cumbersome claims procedures (especially considering that the unclaimed portions of the fund will revert to the defendants); 6) reversion of the settlement funds to the defendants; and 7) treatment of class members filing late claims and a possible reserve of funds for such late claims.  DE 42.

[5] A hearing should be held prior to the court's preliminary approval and determination of whether the proposed settlement is illegal or tainted with collusion.  *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Bronson v. Board of Education*, 604 F. Supp. 68, 71 (S.D. Ohio 1984).  "Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. . . . If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined."  Federal Judicial Center, *Manual for Complex Litigation* 320-21 (4th ed. 2004); *see also In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001).

the fairness of the proposed settlement.  The court finds, based on the representations of counsel, that the twenty-to-one ratio between the award to Ms. Miracle and those to the unnamed class members is not a cause for concern.  The information presented to the court regarding other class-action settlements in strip-search cases shows that the settlements range from very small to very large and thus there is not a good guide for this settlement.  As the first class representative, Ms. Miracle was the only one subjected to a deposition and other discovery, and she was the subject of the media coverage.  After hearing from the parties, the court finds nothing unreasonable regarding the settlement payment ratios, and the court finds that the ratios are fair, reasonable, and adequate.

    With regard to the absolute cap on the amount of the settlement payments to unnamed class members, the court finds that this is also reasonable based on the representations of the parties.  In this case, unlike some other strip-search class actions where settlement payments were larger, there was no written, blanket policy to strip-search every person admitted to the jail, and there were no exigent circumstances.  Thus, the parties would have had to try liability to a jury except for the settlement.  The defendants conducted a mock trial in front of three separate juries that all returned verdicts for the defendants.  This uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendants.  Additionally, the plaintiffs referred to the difficult economic times and their belief that it was less of a gamble for the plaintiffs to

accept this amount rather than attempt to get the uncertain amount that may result from a trial. Finally, the cap was approved by the class representatives, who found it reasonable when they approved the settlement agreement.

The final issue the court requested that the parties address at the hearing was the one-time-award limitation that allows a class member to recover only once, regardless of the number of violations. Counsel for the plaintiffs has experience with these types of actions, including settlements where payments were given for more than one violation. Based on counsel's representations, providing payments for each instance where a claimant's rights were violated complicates the administration of the class, increases the expenses of administration, and prolongs the process. The court agrees, and finds that the advantages of providing a process for multiple recoveries do not outweigh the prejudice to the class rights that would result from the complications and delay.

After careful consideration, the court concludes that there are no substantial grounds to doubt the preliminary fairness, reasonableness, or adequacy of the proposed settlement agreement, and it will grant preliminary approval.

Accordingly,

**IT IS ORDERED** that this matter is **CERTIFIED** as a class action for settlement purposes.

**IT IS FURTHER ORDERED** that the parties' proposed settlement agreement is **PRELIMINARILY APPROVED**.

**IT IS FURTHER ORDERED** that the parties are **DIRECTED** to file the proposed Notice of Settlement and Settlement Claim Form with the court by August 19, 2008.

**IT IS FURTHER ORDERED** that a fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2) is **SCHEDULED** for November 17, 2008, at 3:00 p.m.

Signed on  August 14, 2008

**Jennifer B. Coffman, Judge**
**United States District Court**

15